650 P.2d 648

Carl **PARKER**, Plaintiff-Respondent,

v.

L. Junior **WALLENTINE**, Defendant-Appellant.

No. 13482.

Supreme Court of Idaho.

Aug. 30, 1982.

Kent W. Foster and Curt R. Thomsen, Idaho Falls, for defendant-appellant.

W. F. Merrill, Pocatello, for plaintiff-respondent.

David H. Leroy, Atty. Gen., Don A. Olowinski and Phillip J. Rassier, Deputy Attys. Gen., for amicus curiae.

BISTLINE, Justice.

This is an appeal from an order of the district court that enjoined the pumping of water from an irrigation well located on property owned by L. Junior Wallentine because Wallentine's pumping interfered with a domestic well owned by Carl Parker.

In 1976, the defendant-appellant L. Junior Wallentine drilled a well on his property in Bear Lake County to a depth of 200 feet for the purpose of providing irrigation for a 64 acre field. The Wallentine well was drilled pursuant to state water right permit 11–7069 which authorized pumping at a rate of 1350 gpm and which provided that the well was subject to all existing water rights. The Wallentine irrigation well was located approximately 125 to 150 feet from a well used for domestic purposes on property owned by the plaintiff-respondent Carl Parker. The Parker well had been drilled in 1964 to a depth of 71 feet.

On March 4, 1976, a pump test was performed on Wallentine's irrigation well to determine whether there was an adequate water supply to irrigate Wallentine's field. The test began at approximately 4:10 p. m. and continued until approximately 8:30 p. m. that evening. At 4:20 p. m. on March 4 Carl Parker discovered that his domestic well had ceased to produce water. The following morning the well once again produced water, but the water was muddy and continued to be so for several days.

In May, 1977, Wallentine installed a pump in his well and planted crops in his field. In June, 1977, as Wallentine prepared to irrigate, Parker filed suit and obtained a temporary restraining order prohibit-

ing the operation of the pump. Following a hearing on the matter, the district court granted a preliminary injunction restraining the use of the irrigation well unless Wallentine obtained from the Department of Water Resources a determination of the reasonable pumping level for the area and deepened Parker's well at Wallentine's expense.

Following the court's preliminary order the parties stipulated that a pump test be conducted by the Department of Water Resources. The test was performed on April 5–6, 1978, and a report of the results of the test was forwarded to the district court. The conclusions of the report were: 1) the Wallentine irrigation well and the Parker domestic well were completed in the same aquifer system and are hydraulically connected, and 2) in order to prevent interference with the Parker well the irrigation well would have to be limited to a pumping rate of only 72 gpm, about 5% of the rate authorized by Wallentine's water right permit.

On October 19, 1978, Wallentine filed an answer to Parker's complaint and counterclaimed for the damages allegedly sustained as a result of the preliminary injunction. Through his attorney Wallentine requested the Director of the Department of Water Resources, C. Stephen Allred, to establish a reasonable ground water pumping level for the area. Allred responded with a letter stating that "the economic pumping lift was calculated to be approximately 200 feet." He further stated that in this specific case the economic pumping lift and reasonable pumping lift "can be considered one and the same."

On August 20, 1979, the district court denied a motion by Wallentine for relief from its order granting the preliminary injunction and granted a permanent injunction against the use of the irrigation well. The court's order provided in part:

"IT IS HEREBY ORDERED that the defendant is permanently enjoined from

the use of his well as an irrigation well conditioned on the fact that the defendant may subsequently attempt to determine a reasonable level of pumping and or damages for the taking of the plaintiff's water provided that the defendant can demonstrate that the use to which he desires to put the water is a greater public use than that of the plaintiff." [1]

The Idaho legislature originally dealt with the subject of ground water when it enacted the Ground Water Act in 1951. *See* 1951 Idaho Sess.Laws ch. 200, pp. 423–29. Sections 1, 2 and 4 of the Act were subsequently codified as I.C. §§ 42–226, –227 and –229. As originally enacted, these provisions stated:

"Section 1. GROUND WATERS ARE PUBLIC WATERS.—

It is hereby declared that the traditional policy of the State of Idaho, requiring the water resources of this State to be devoted to beneficial use in reasonable amounts through appropriation, is affirmed with respect to the ground water resources of this State as said term is hereinafter defined. All ground waters in this state are declared to be the property of this state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same for beneficial use. All rights to the use of ground water in this state however acquired before the effective date of this act are hereby in all respects validated and confirmed.

Section 2. DRILLING AND USE OF WELLS FOR DOMESTIC PURPOSES EXCEPTED.

The excavation and opening of wells and the withdrawal of water therefrom for domestic purposes shall not be in any way affected by this act; providing such wells and withdrawal devices are subject to inspection by the department of public health. Rights to ground water for domestic purposes may be acquired by withdrawal and use.

. . . . .

---

1. The modification in the conditions contained in the temporary injunction resulted because it was determined that the Parker domestic well

could not as a practical matter be deepened due to its proximity to the Parker house.

Section 4. METHODS OF APPROPRIATION.

The right to the use of ground water of this state may be acquired only by appropriation. Such appropriation may be perfected by means of diversion and application to beneficial use or by means of the application permit and license procedure in this act provided. All proceedings commenced prior to the effective date of this act for the acquisition of rights to the use of ground water under the provisions of Chapter 2 of Title 42, *Idaho Code,* may be completed under the provisions of said chapter 2, and rights to the use of ground water may be thereby acquired. But the administration of all rights to the use of ground water, whenever or however acquired or to be acquired, shall, unless specifically excepted therefrom, be governed by the provisions of this act."

The Ground Water Act has been amended several times since its original enactment. Of particular importance to this case is the legislature's amendment of I.C. § 42–226, section 1 of the original Act, in 1953. This section was changed to provide:

"Section 1. GROUND WATERS ARE PUBLIC WATERS.—It is hereby declared that the traditional policy of the state of Idaho, requiring the water resources of this state to be devoted to beneficial use in reasonable amounts through appropriation, is affirmed with respect to the ground water resources of this state as said term is hereinafter defined*: *and, while the doctrine of 'first in time is first in right' is recognized, a reasonable exercise of this right shall not block full economic development of underground water resources, but early appropriators of underground water shall be protected in the maintenance of reasonable ground water pumping levels as may be established by the state reclamation engineer as herein provided.* All

ground waters in this state are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same for beneficial use. All rights to the use of ground water in this state however acquired before the effective date of this act are hereby in all respects validated and confirmed. 1953 Idaho Sess.Laws, ch. 182, § 1, pp. 278–79." [2] (Emphasis in original.)

The legislature did not modify I.C. § 42–227 in 1953 and that section continued to provide that domestic wells "shall not be in any way affected by this act." I.C. § 42–227 was, however, amended in 1978 by an act entitled "AN ACT RELATING TO DOMESTIC WELL REGULATIONS; AMENDING SECTION 42–227, IDAHO CODE, TO CLARIFY THAT DOMESTIC WELLS ARE EXEMPT FROM THE PROVISIONS OF SECTION 42–229, IDAHO CODE." 1978 Idaho Session Laws, ch. 324, p. 819. I.C. § 42–227 now provides: [3]

"42–227. *Drilling and use of wells for domestic purposes excepted.*—The excavation and opening of wells and the withdrawal of water therefrom for domestic purposes shall not be subject to the permit requirement under section 42–229, Idaho Code; providing such wells and withdrawal devices are subject to inspection by the department of water resources and the department of health and welfare and providing further that the drilling of such wells shall be subject to the licensing provisions of section 42–238, Idaho Code. Rights to ground water for such domestic purposes may be acquired by withdrawal and use.

In its order, the trial court held that prior to its amendment in 1978, I.C. § 42–227 exempted domestic wells from the "reasonable ground water pumping levels" limitation which I.C. § 42–226 places upon the

**2.** I.C. § 42–226 is the same today as in 1953 except that the title of the director of the department of water administration has been changed from "the state reclamation engineer" to "the director of the department of water resources." *See* 1974 Idaho Sess.Laws ch. 286,

§ 1, pp. 1736–37; 1974 Idaho Sess.Laws ch. 20, § 28, p. 564.

**3.** I.C. § 42–227 was also amended in 1970, *see infra* note 6, but that amendment is not relevant to the disposition of this case.

doctrine of prior appropriation. The court further held that since Parker's well was in existence prior to the 1978 amendment of I.C. § 42–227, which modified the exemption for domestic wells, the amendment had no effect on the rights acquired by Parker in his well. We affirm the decision of the district court and hold that domestic wells drilled prior to 1978 are exempt from the provisions of I.C. § 42–226.[4]

Wallentine argues that I.C. § 42–227 should be construed to exempt domestic wells only from the permit requirements of I.C. § 42–229 and not from the "reasonable pumping levels" provision of I.C. § 42–226. He argues that this construction of the Act is necessary in order to be consistent with the policy statements contained in the 1953 amendment of I.C. § 42–226 favoring full economic development of ground water resources in the state. Thus, Wallentine contends that under I.C. § 42–226, Parker's senior domestic well is protected only to the extent that he maintains reasonable ground water pumping levels as may be established by the Director of the Department of Water Resources.[5] He also contends that the letter Wallentine received from C. Stephen Allred establishes the reasonable pumping level for the area at 200 feet and since the depth of the Parker domestic well is less than 200 feet, Parker has no water right which can be afforded protection as against Wallentine.

■ Until its amendment in 1978, the Ground Water Act specifically provided that wells developed only for domestic use "shall not be in any way affected by this Act." The language chosen by the legislature is unambiguous, and this exclusionary language was not significantly modified until 1978.[6] "The most fundamental premise underlying judicial review of the legislature's enactments is that, unless the result

---

**4.** The Idaho Department of Water Resources, as amicus curiae, argues that this case can be decided without reference to the original Ground Water Act or its subsequent amendments, urging that this case can be decided as a "well interference" case. However, we find no provision exempting "well interference" cases in the Ground Water Act. Virtually all disputes between junior and senior appropriators of either ground or surface water rights result from an alleged interference of some sort. The Ground Water Act was enacted to provide rules for determining under what circumstances a senior appropriator is entitled to protection from interference with his water rights by a junior appropriator. While it is true that the water right permit issued to Wallentine in this case made his rights in the irrigation well subject to "all existing water rights," this does not end our determination. The issue in this case is the type of protection to which Parker's right is entitled. Because the existence of such a right initially depends on whether Parker's domestic well is exempt from the reasonable pumping level provisions of I.C. § 42–226, we conclude that it is necessary in this case to determine the effect of the provisions of the Ground Water Act.

The Department also contends that the Ground Water Act does not apply in this case because the issue of whether a senior appropriator of ground water is protected in the maintenance of a certain pumping level under I.C. § 42–226 is properly raised only if the junior appropriator has affirmatively demonstrated that he cannot reasonably divert ground water without lowering the senior's pumping level and that such lowering is necessary to achieve the goal of full economic development. However, nowhere in the language of the Act do we find such a burden. Furthermore, we do not believe any such burden should be imposed, since as a practical matter it would be an impossible burden to satisfy. In this very case the record demonstrates that the Department issued the water permit to Wallentine because its experts did not expect that the Wallentine well would have a significant impact on the Parker domestic well. This later proved to be incorrect. Because it appears to be impossible to determine with certainty that a new well will not interfere with existing wells, we decline to adopt the position of the Department in this regard.

**5.** Wallentine's position in this regard is supported by the amicus brief filed by the Department of Water Resources.

**6.** The exclusionary language in I.C. § 42–226 was originally limited only by a clause allowing the Department of Public Health the right of inspection. In 1970, an amendment to I.C. § 42–227 provided that domestic wells "shall be subject to the licensing provisions of section 42–238." 1970 Idaho Sess.Laws ch. 187, § 1, p. 541. I.C. § 42–238 addresses licenses required of well drillers and therefore this amendment is not relevant to this particular case. No other exceptions were added to the broad exemption afforded domestic wells under I.C. § 42–227 until the statute was significantly modified in 1978.

is palpably absurd, the courts must assume that the legislature meant what it said. Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect." *State Department of Law Enforcement v. One 1955 Willy's Jeep,* 100 Idaho 150, 153, 595 P.2d 299, 302 (1979). There is no indication that the words of the Ground Water Act should be interpreted in any way other than as they are normally used. Under the plain language of the 1951 Act, domestic wells were exempt from the provisions of that Act.

The exemption for domestic wells was not modified by the 1953 amendment to I.C. § 42–226 which established the reasonable pumping level limitation on the doctrine of first in time is first in right. It is axiomatic that when the legislature considers the amendment of a statute, it has in mind all existing law on the same subject matter. *First American Title Co. of Idaho, Inc. v. Clark,* 99 Idaho 10, 13, 576 P.2d 581, 584 (1978); *State v. Jennings,* 95 Idaho 724, 726, 518 P.2d 1186, 1188 (1974). Thus, when the legislature amended I.C. § 42–226, it is presumed to have had in mind the broad exemption originally granted to domestic wells. It is also to be presumed that in retaining I.C. § 42–227 as it was originally enacted, the legislature intended that the provision have continuing validity and force. *State v. Jennings, supra.*

Wallentine contends that the 1978 amendment of I.C. § 42–227 indicates that the legislature never intended domestic wells to be exempt from the policy statements contained in I.C. § 42–226.[7] The title of the 1978 amendment reads: "AN ACT RELATING TO DOMESTIC WELL REGULATIONS: AMENDING § 42–227, IDAHO CODE, TO CLARIFY THAT DOMESTIC WELLS ARE EXEMPTED FROM THE PROVISIONS OF § 42–279, I.C." However, the fact that the words "to clarify" appear in the title of the 1978 amendment does not automatically compel this Court to a decision that the Legislature did not mean to say what it so clearly did say in its original enactment of the Ground Water Act or its refusal to amend I.C. § 42–227 in 1953. *See Ware v. Idaho State Tax Commission,* 98 Idaho 477, 481, 567 P.2d 423, 427 (1977). We need not look beyond the language of the Ground Water Act to determine the legislature's intent with regard to domestic wells. That intent was expressly stated in I.C. § 42–227 and provided that domestic wells "shall not be in any way affected by this act."[8]

Wallentine next argues that if we interpret the Ground Water Act as exempting domestic wells from the reasonable pumping level provisions of I.C. § 42–226, this would allow one shallow domestic well to block the development of all irrigation wells in a given area. This he contends would be inconsistent with the constitutionally enunciated policy of "optimum development of water resources in the public interest." *See* Id. Const., art. XV, § 7. Seeing merit in his argument, but with due consideration for Parker's position, we believe the controversy is capable of a just solution.

Article XV, section 7 of the Idaho Constitution provides, in relevant part: "There shall be constituted a Water Resource Agency . . . which shall have power

---

7. Wallentine also contends that the 1978 amendment of I.C. § 42–227, which eliminates the broad exemption for domestic wells, should be applied retroactively to thereby extinguish any right Parker had. However, statutes in Idaho are not to be applied retroactively in the absence of clear legislative expression to that effect. *Johnson v. Stoddard,* 96 Idaho 230, 234, 526 P.2d 835, 839 (1974); *Edwards v. Walker,* 95 Idaho 289, 291, 507 P.2d 486, 488 (1973). Nothing in the 1978 amendment or the circumstances of its enactment indicates that the legislature intended this amendment to have retroactive effect.

8. If the intention of the legislature was not expressly stated, it might be argued that the 1978 amendment should be considered in our determination of what construction should be given the Ground Water Act. *See Lincoln County v. Fidelity & Deposit Co..of Maryland,* 102 Idaho 489, 632 P.2d 678 (1981) (Bistline, J., dissenting). However, in this case it is not necessary to consider the later amendment to discern legislative intent, as that intent was unambiguously expressed.

to formulate and implement a state water plan for optimum development of water resources in the public interest ... *under such laws as may be prescribed by the Legislature.*" (Emphasis added.) The Ground Water Act was the vehicle chosen by the legislature to implement the policy of optimum development of water resources. Until 1978 the Act expressly exempted domestic wells from almost all provisions contained in the Act. The decision as to how the optimum development of water resources in the State of Idaho can best be achieved is a policy decision exclusively within the province of the legislature. The legislature was therefore free to give special consideration to the position of domestic water users in enacting legislation to implement the policy of "optimum development." When the legislature's intent is unambiguous, as it is in this case, a court's proper concern is to give effect to that intent as expressed, regardless of the potential results. *Florek v. Sparks Flying Service, Inc.,* 83 Idaho 160, 164, 359 P.2d 511, 512 (1961). Under the circumstances, the express exemption provided for domestic wells in I.C. § 42–227 until 1978, cannot be said to be contrary to any constitutional mandate.[9]

■ Although we hold that Parker's domestic well is exempt from the reasonable pumping level provisions of I.C. § 42–226, we must still determine whether Parker has an interest in his domestic well which arises independent of the Ground Water Act. Prior to the enactment of the Ground Water Act, the doctrine of prior appropriation, i.e., first in time is first in right, governed the appropriation of ground water in the State of Idaho.[10] Although this doctrine was modified in certain respects by the enactment of the Ground Water Act, the law applicable to ground water used for domestic purposes was not significantly modified by the Act. Under the doctrine of prior appropriation, because Parker's domestic well was drilled prior to Wallentine's irrigation well, Parker has a vested right to use the water for his domestic well. That right includes the right to have the water available at the historic pumping level or to be compensated for expenses incurred if a subsequent appropriator is allowed to lower the water table and Parker is required to change his method or means of diversion in order to maintain his right to use the water. *See Noh v. Stoner,* 53 Idaho 651, 26 P.2d 1112 (1933). *See also* Hutchins, *Protection in Means of Diversion of Ground-Water Supplies,* 29 Cal.L.Rev. 1, 15 (1941).

In *Noh* subsequent appropriators of water appealed a district court order granting an injunction restraining them from interfering with the prior appropriator's wells. The argument made was that the prior appropriator's means of diversion were not adequate and thus, that they should be required to pump from a lower level. The Court in *Noh,* however, rejected this argument and stated:

"Appellant cites 26 Cal.Jur., sec. 311, p. 112:

'A court of equity may, under proper circumstances, compel a prior appropriator to change the manner of his use so as to prevent unnecessary injury to those having subordinate rights, ....' The text, however, has this in addition: 'Of

9. In fact, the exemption for domestic wells which originally existed in I.C. § 42–227 was a statutory preference consistent with the constitutional preference that is granted to water used for domestic purposes in article XV, § 3 of the Idaho Constitution. The provision also gives domestic water users the right to condemn the water rights of prior appropriators of water for agricultural or industrial purposes when there is insufficient water to meet the needs of all those desiring to use the water, subject to the payment of reasonable compensation. *Montpelier Milling Co. v. Montpelier,* 19 Idaho 212, 113 P. 741 (1911).

10. The doctrine of prior appropriation was recognized by statute as the rule to be applied in surface water disputes in Idaho even before Idaho became a state. *See* 1881 Idaho Sess. Laws, p. 267, § 1. That doctrine was codified as section 3159 of the Revised Statutes of Idaho of 1887, and was constitutionalized as article XV, § 3 of the Idaho Constitution. This Court later ruled that the doctrine of prior appropriation also applied in disputes involving subterranean waters, *i.e.* ground waters. *Hinton v. Little,* 50 Idaho 371, 296 P. 582 (1931).

course, any interference with the rights of prior appropriators is actionable. Whether a subsequent use causes such interference is a question of fact.'

"Herein the Court has found on substantial though conflicting evidence that appellants' use interferes with respondent's." 33 Idaho at 654, 26 P.2d at 1113. Thus, the Court in *Noh* concluded: "If subsequent appropriators desire to engage in such a contest [a race to the bottom of the aquifer] the financial burden must rest on them and with no injury to the prior appropriators or loss of their water." *Id.* at 657, 26 P.2d at 1114. Under the principles set forth in *Noh,* the trial court under the factual situation presented in this case acted properly in enjoining the use of the Wallentine irrigation well.[11]

■ The injunction, however, is not permanent in the sense that it precludes further resolution of the problem. Nor does it appear that the trial court so intended. The right to appropriate unappropriated water is guaranteed by article XV, section 3 of the Idaho Constitution.[12] Furthermore, it is clearly state policy that water be put to its maximum use and benefit. *Poole v. Olaveson,* 82 Idaho 496, 502, 356 P.2d 61, 65 (1960). *See* Hutchins, The Idaho Law of Water Rights, 5 Idaho L.Rev. 1, 2 (1968). That policy has long been recognized in this state and was reinforced in 1964 by the adoption of article XV, section 7 of the Idaho Constitution.[13] *See Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973).

The policy of maximum use was recognized in *Bower v. Moorman,* 27 Idaho 162, 147 P. 496 (1915), a case involving a permanent injunction against interfering with a prior appropriator's well. The Court stated that "[a]ny interference with a vested right to the use of water, whether from open streams, lakes, ponds, percolating or subterranean water, would entitle the party injured to damages, and an injunction would issue perpetually restraining such interference." 27 Idaho at 181, 147 P. at 502. However, the Court in *Bower* held that the evidence was not sufficient to justify the issuance of a perpetual injunction against the completion of the interfering well. *Id.* The Court went on to hold that "[t]he ne-

---

11. Although this Court in *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 581–83, 513 P.2d 627, 633–35 (1973), held that *Noh* is not applicable to cases determined under the reasonable pumping level provisions of the Ground Water Act, *Noh* is applicable in circumstances such as these in which I.C. § 42–226 does not apply.

12. Article 15, section 3 of the Idaho Constitution provides:

"Water of natural stream—Right to appropriate—State's regulatory power—Priorities. —The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied, except that the state may regulate and limit the use thereof for power purposes. Priority of appropriations shall give the better right as between those using the water; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall (subject to such limitations as may be prescribed by law) have the preference over those claiming for any other purpose; and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes. And in any organized mining district those using the water for mining purposes or milling purposes connected with mining, shall have preference over those using the same for manufacturing or agricultural purposes. But the usage by such subsequent appropriators shall be subject to such provisions of law regulating the taking of private property for public and private use, as referred to in section 14 of article I of this Constitution."

13. Article 15, section 7 of the Idaho Constitution provides:

"State water resource agency.—There shall be constituted a Water Resource Agency, composed as the Legislature may now or hereafter prescribe, which shall have power to formulate and implement a state water plan for optimum development of water resources in the public interest; to construct and operate water projects; to issue bonds, without state obligation, to be repaid from revenues of projects; to generate and wholesale hydroelectric power at the site of production; to appropriate public waters as trustee for Agency projects; to acquire, transfer and encumber title to real property for water projects and to have control and administrative authority over state lands required for water projects; all under such laws as may be prescribed by the Legislature."

cessity for changing the method or means of diverting the water ... would not, of itself, deprive a subsequent appropriator of the right to divert and use unappropriated subterranean water. While the subsequent appropriator would be liable in damages, *he would have the right to divert surplus subterranean waters."* *Id.* at 183, 147 P. at 503 (emphasis added). Thus, the Court stated: "If the sinking of the [subsequent appropriator's] well ... would not interfere with the flow of the water in the [prior appropriator's well], or if there was a loss of water in the [prior appropriator's well] that could be returned without material damages to [the prior appropriator's] well and at the same time the [subsequent appropriator's] well be supplied with water, the court would not be justified in preventing the completion of the [subsequent appropriator's] well." *Id.* at 182, 147 P. at 502.

In essence, the Court in *Bower* held that a perpetual injunction should not be granted if, by changing the prior appropriator's method or means of diversion, both parties can be supplied with water. The right of a subsequent water user to divert unappropriated waters was similarly alluded to in *Noh,* [14] but as in *Bower,* that right was conditioned upon the subsequent appropriator's payment of damages.

 The principles set forth in *Bower* and *Noh* balance the competing interests of the parties involved and the public and

serve to effectuate the policy of maximum development of the water resources of this state. Under these principles, we hold that Wallentine has a right to divert any surplus subterranean waters provided and so long as his diversion of such waters does not deprive Parker of his use of the water. Parker will not be deprived of any right to his use if water can be obtained for Parker by changing the method or means of diversion. The expense of changing the method or means of diversion, however, must be paid by the subsequent appropriator, Wallentine, so that Parker will not suffer any monetary loss. Thus, upon a proper showing by Wallentine that there is adequate water available for both he and Parker, it is within the inherent equitable powers of the court upon a proper showing and in accordance with the views herein expressed to enter a decree which fully protects Parker and yet allows for the maximum development of the water resources of the state.[15]

Because we hold that it was within the equitable power of the district court to order Parker to change his means of diversion so long as Wallentine is required to bear the financial burden, it is not necessary for us to consider whether, as the trial court suggested, Parker's water right is subject to appropriation by Wallentine through eminent domain proceedings. Similarly, we agree with the trial court that any determi-

---

**14.** In *Noh,* the Court noted that "[i]t is thus apparent that it is a controversy between appellants and respondents as to who will bear the expense of lowering respondents' pumps, so they will receive the same amount of water as before...." 53 Idaho at 656, 26 P.2d at 1113–14. The Court settles the controversy by stating that "any expense involved herein for [the] purpose [of lowering respondents' pumps] must fall on appellants and not on respondents." *Id.* Thus, although the Court affirmed the injunction granted by the district court against interference by the appellants with respondents' well, it clearly contemplated that the appellants would be able to further develop the water so long as it paid for the lowering of respondents' pumps.

**15.** By coming to court and seeking an injunction against the use of Wallentine's irrigation well, Parker invoked the equitable powers of the court. "It is a fundamental principle that

one who seeks equity may be required to do equity with respect to the subject matter involved before relief will be awarded." 27 Am. Jur.2d Equity § 131, p. 660 (1966). *See Haener v. Albro,* 73 Idaho 250, 259, 249 P.2d 919, 925 (1952). Under this principle, a Court of equity has the power "to make its granting of relief dependent upon the performance of conditions by a party litigant." 27 Am.Jur.2d Equity § 134 at 664 (1966). Thus, in this case, the court could clearly condition the injunction on Parker's later acceptance of a well drilled at Wallentine's expense to a reasonable pumping level. *See generally* Hutchins, *Protection in Means of Diversion of Ground Water Supplies.* 29 Cal.L.Rev. 1, 15 (1940) ("courts have adequate power to arrange for physical solutions which will contribute to conservation and beneficial use of the entire water supply while safeguarding existing rights of use.").

nation of the amount of damages, perhaps better called compensation, that may be sustained by the plaintiff Parker would be premature. The necessity of making such determinations, of course, will arise only if Wallentine petitions the court for an order allowing him to develop the water, and it will necessarily entail the presentation of evidence which was not presented in submitting the injunction issue tried below.

The judgment below is affirmed as modified in accordance with the views herein expressed. Costs to respondents.

BAKES, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.