# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37574-2010

JOSEPH M. VERSKA, M.D., and THE
SPINE INSTITUTE OF IDAHO,

    Plaintiffs-Appellants,

v.

SAINT ALPHONSUS REGIONAL
MEDICAL CENTER; CHRISTIAN G.
ZIMMERMAN, M.D.; and DONALD FOX,
M.D.,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2011 Term

2011 Opinion No. 115

Filed: November 9, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Deborah A. Bail, District Judge.

The order of the district court is <u>affirmed</u>.

Raymond D. Powers; Powers Tolman, PLLC; Boise; argued for appellants.

Brad Fisher; Davis Wright Tremaine, LLP; Seattle, Washington; argued for respondents.

_____

EISMANN, Justice.

This is a permissive appeal from an order of the district court holding that the statute making peer review records privileged applies, by its terms, to a lawsuit brought against a hospital claiming that the hospital acted in bad faith in refusing to renew a physician's privileges. We affirm the order of the district court.

## I.

### Factual Background

Joseph Verska, M.D., (Physician) is an orthopedic spine surgeon licensed in the State of Idaho. On January 22, 1996, he was appointed to the medical staff of Saint Alphonsus Regional

Medical Center (Hospital) located in Boise. Thereafter, he was continually reappointed through June 30, 2008.

As required by Idaho law, Hospital caused its medical staff to organize in-hospital medical staff committees to review the professional practices of members of the Hospital's medical staff for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital. After a series of reviews of Physician's practice initiated in 2004 by Hospital and in 2006 and 2007 by its Medical Executive Committee, on July 9, 2008, Physician requested a hearing before a Fair Hearing Panel. After an evidentiary hearing in late October 2008, the panel made recommendations, which were rejected by Hospital. Since July 1, 2008, Physician has not had privileges at Hospital.

On July 23, 2009, Physician and The Spine Institute of Idaho, a professional corporation created by Physician, (Plaintiffs) filed this action against Hospital and physicians Christian G. Zimmerman and Donald Fox (herein collectively called "Defendants"). Plaintiffs alleged that Defendants conspired to wrongfully harm them, intentionally and/or negligently interfered with their economic advantage, interfered with Physician's prospective contractual relations and business expectations, defamed them, and intentionally and/or negligently inflicted emotional distress upon Physician. Plaintiffs also alleged that Hospital and Dr. Fox breached the implied covenant of good faith and fair dealing and that Hospital denied Physician fair procedure rights, breached its fiduciary duties, and violated his due process rights. In addition to damages, Plaintiffs sought an injunction requiring Hospital to restore Physician's privileges.

During this litigation, Plaintiffs initiated discovery related to the process, activities, and decisions that led to Hospital's decision to deny Physician's application to be reappointed to the medical staff and to have his privileges renewed. Hospital objected on the ground that such information was protected by the peer review privilege. Plaintiffs filed a motion seeking to compel discovery, and Defendants sought a motion for a protective order. On February 5, 2010, the district court entered an order denying the motion to compel and granting the protective order. The court determined, "I.C. § 39-1392b unambiguously protects all peer review records from discovery of any type and bars any testimony about those peer review records." This Court granted Plaintiffs' request for a permissive appeal of that order pursuant to Idaho Appellate Rule 12.

We grant such appeals only in the most exceptional cases. *Aardema v. U.S. Dairy Systems, Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009). The factors we consider are as follows:

> In accepting or rejecting an appeal by certification under I.A.R. 12, this Court considers a number of factors in addition to the threshold questions of whether there is a controlling question of law and whether an immediate appeal would advance the orderly resolution of the litigation. It was the intent of I.A.R. 12 to provide an immediate appeal from an interlocutory order if substantial legal issues of great public interest or legal questions of first impression are involved. The Court also considers such factors as the impact of an immediate appeal upon the parties, the effect of the delay of the proceedings in the district court pending the appeal, the likelihood or possibility of a second appeal after judgment is finally entered by the district court, and the case workload of the appellate courts. No single factor is controlling in the Court's decision of acceptance or rejection of an appeal by certification, but the Court intends by Rule 12 to create an appeal in the exceptional case and does not intend by the rule to broaden the appeals which may be taken as a matter of right under I.A.R. 11.

*Budell v. Todd*, 105 Idaho 2, 4, 655 P.2d 701, 703 (1983). In this case, the order of the district court involved a matter of first impression, the issues raised were controlling questions of law, an immediate appeal would advance the orderly resolution of the litigation, and it would decrease the likelihood of a second appeal. Because of the nature of an interlocutory appeal, we address only the precise question that was presented to and decided by the trial court. *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989).

## II.

### Does Idaho Code Section 39-1392b Apply to This Case?

A peer review privilege is created by Idaho Code section 39-1392b, which provides:

> Except as provided in section 39-1392e, Idaho Code, all peer review records shall be confidential and privileged, and shall not be directly or indirectly subject to subpoena or discovery proceedings or be admitted as evidence, nor shall testimony relating thereto be admitted in evidence, or in any action of any kind in any court or before any administrative body, agency or person for any purpose whatsoever. . . .

It is undisputed that the records sought by Plaintiffs are peer review records. The statute states that "all peer review records shall be confidential and privileged." It further provides that such records "shall not be directly or indirectly subject to subpoena or discovery proceedings or

3

be admitted as evidence, nor shall testimony relating thereto be admitted in evidence." The privilege applies "in any action of any kind in any court." Thus, by its terms, the statute applies to this litigation.

Plaintiffs contend that Hospital is a business; that it developed an in-house entity named the "Spine Medicine Institute of Idaho," which competes with Plaintiffs; that Hospital's actions in denying Physician privileges were motivated by the desire to remove him as a competitor; and that for public policy reasons the statute therefore should not apply. The statute does not create an exception for this type of litigation, and we cannot create such an exception under the rubric of public policy. The creation of such an exception is an issue within the province of the legislature.

The act creating the peer review privilege, I.C. §§ 39-1392 through 39-1392e, was enacted in 1973. Plaintiffs contend that the statement of purpose accompanying that legislation indicates that it was intended to apply only to medical malpractice actions. The statement of purpose was not enacted into law. The statutes were. There is no wording in section 39-1392b that limits its scope to peer review records sought in a medical malpractice action. In that respect, the legislation is unambiguous.

"The asserted purpose for enacting the legislation cannot modify its plain meaning. The scope of the legislation can be broader than the primary purpose for enacting it." *Viking Constr., Inc. v. Hayden Lake Irr. Dist.*, 149 Idaho 187, 191-92, 233 P.3d 118, 122-23 (2010). "If the statute as written is socially or otherwise unsound, the power to correct it is legislative, not judicial." *In re Estate of Miller*, 143 Idaho 565, 567, 149 P.3d 840, 842 (2006). The interpretation of a statute "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003) (citations omitted). "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993).

Plaintiffs also contend that wording in subsections (a) through (e) of Idaho Code section 39-1392e indicate that the peer review statutes were intended only to apply to medical

4

malpractice actions. Those subsections specifically apply in medical malpractice actions.[1] Subsection (f) clearly is not limited to medical malpractice actions. For example, it applies to "any physician . . . whose conduct . . . is the subject of investigation . . . in the course of . . .

---

[1] Idaho Code sections 39-1392e(a)-(e), with the provisions upon which Plaintiffs rely highlighted, provide as follows:

(a) In the event of a claim or civil action **against a physician**, emergency medical services personnel, a hospital or a skilled nursing facility arising out of a particular physician-patient, emergency medical services personnel-patient, hospital-patient relationship, or skilled nursing facility-patient, or which concerns the sufficiency of the delivery of particular health care to a specific patient, any health care organization having information of the kind covered by section 39-1392b, Idaho Code, shall, when interrogated as hereinafter provided, advise any **such claimant** who is or was such a **patient** or who, in a representative capacity, acts on behalf of such patient or his heirs, as follows :
(1) Whether it has conducted or has in progress an inquiry, proceeding or disciplinary matter regarding the quality or propriety of the health care involved, which concerns the subject patient while he was under the care or responsibility of a member of such health care organization or while he was a patient in such hospital or facility; and, if so,
(2) Whether disposition of any kind resulted or will result therefrom; and, if so,
(3) What the disposition was, or, if not yet determined, approximately when it will be determined. Such disclosure of information shall be limited to the health care organization's actions in connection with the physician, emergency medical services personnel, hospital or skilled nursing facility against whom such claim is asserted.
(b) **Such a claimant** shall likewise be entitled to inquire of such health care organization respecting the names and addresses of persons who such health care organization knows to have direct knowledge of the provision of the health care in question, such inquiry to be limited, however, to the particular patient and the particular times and occasions germane to the specific occurrences on which the claim is based; provided, names shall not be disclosed respecting persons who have gained secondary knowledge or formed opinions respecting the matter solely by participating as witnesses, officials, investigators or otherwise on, for, or in connection with such a health care organization committee, staff, governing board or the state board of medicine.
(c) Such limited, conditional discovery and disclosure of information as provided above shall be allowed only in response to inquiries directed to such a health care organization, and then only if initially propounded **by a claimant of the type above described**. If the matter is in litigation, inquiry may be by customary means of discovery under the Idaho rules of civil procedure, or, if pending in a United States court, then under discovery as allowed by its applicable rules; provided, pendency of the claim in the United States court or before any other tribunal shall not operate to broaden the exception to the rules of privilege, confidentiality and immunity set down in this act.
(d) Such disclosures may be voluntarily made without judicial order or formal discovery **if all disciplined, accused or investigated physicians** or emergency medical services personnel consent thereto, and if privileged or confidential information regarding any other patient, physician, emergency medical services personnel, or person will not be disclosed thereby. When the terms of this paragraph are complied with, such voluntary disclosures may be made without civil liability therefor as if in due response to valid judicial process or order.
(e) **If any claimant** makes such inquiry of any such health care organization, he shall be deemed to have consented to like inquiry and disclosure rights for the benefit **of all parties against whom he asserts such claim or brings such suit or action**, and all other persons who are parties to such action, and thereafter all such persons and parties may invoke the provisions of this section, seeking and securing specific information as herein provided for the benefit of such claimant, to the same extent as the same is allowed to such claimant.

disciplinary proceeding or investigation of the sort contemplated by this act, [who] makes claim or brings suit on account of such health care organization activity." I.C. § 39-1392e(f). Likewise, section 39-1392b, which creates the peer review privilege, is not, by its terms, limited to medical malpractice actions. The fact that a portion of a statute has a restricted application does not similarly restrict the entire act of which that portion was a part.

## III.

### Does This Court Have the Authority To Modify an Unambiguous Statute
### If the Result of Applying It As Written is Palpably Absurd?

Plaintiffs quote from *Federated Publications, Inc. v. Idaho Business Review, Inc.*, 146 Idaho 207, 210, 192 P.3d 1031, 1034 (2008), wherein we stated, "Unless the result is palpably absurd, this Court must assume that the legislature meant what it wrote in the statute." Relying upon that quote, they contend, "The literal wording of a statute cannot be honored if it creates unreasonable, absurd results . . . ." They then argue that applying Idaho Code section 39-1392b to bar their access to the peer review records would be an absurd result.

The language upon which Plaintiffs rely had its genesis in *State, Department of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 595 P.2d 299 (1979). That case involved the timing of a hearing in contested asset forfeiture proceedings under the Uniform Controlled Substances Act. A party contesting the asset forfeiture was required to file a verified answer. The statute in question stated, "If a verified answer is filed, the forfeiture proceeding shall be set for hearing before the court without a jury on a day not less than thirty (30) days therefrom; and the proceeding shall have priority over other civil cases." I.C. § 37-2744(d)(3)(D). In *Willys Jeep*, the party contesting the forfeiture filed a motion to dismiss the proceedings, contending that the hearing had not been held within thirty days of the filing of the verified answer as required by the statute. The magistrate court denied the motion to dismiss because the clear wording of the statute required the hearing to be at least thirty days *after* the verified answer was filed, not *within* ninety days of filing the verified answer. The district court reversed, holding that the hearing must be held within thirty days of the filing of the verified answer in spite of the statute's literal language, stating that once the verified answer was filed, the hearing was to be "not less than thirty (30) days therefrom." *Willys Jeep,* 100 Idaho at 151, 595 P.2d at 300. In reversing the district court on appeal, this Court stated:

6

The most fundamental premise underlying judicial review of the legislature's enactments is that, unless the result is palpably absurd, the courts must assume that the legislature meant what it said. Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect. *Worley Highway Dist. v. Kootenai County*, 98 Idaho 925, 576 P.2d 206 (1978); *Moon v. Investment Board*, 97 Idaho 595, 548 P.2d 861 (1976); *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964). Referring to a virtually identical Arizona statute, the Arizona court stated that the purpose of the statute was to provide "the law enforcement agencies with 30 days in which to prepare prosecution of their case." *State ex rel. Berger v. McCarthy*, 113 Ariz. 161, 164, 548 P.2d 1158, 1161 (1976). Likewise, the Idaho legislature may have intended to provide the state with a thirty day period in which to prepare its case. A literal reading of the statute is not necessarily irrational or absurd. Therefore, the statute must be interpreted as written.

*Id.* (footnote omitted).

The *Willys Jeep* Court began its analysis by stating, "The most fundamental premise underlying judicial review of the legislature's enactments is that, unless the result is palpably absurd, the courts must assume that the legislature meant what it said." *Id.* at 153, 595 P.2d at 302. It concluded its analysis by stating: "A literal reading of the statute is not necessarily irrational or absurd. Therefore, the statute must be interpreted as written." *Id.* at 154, 595 P.2d at 303. Because there was no contention that the statute was ambiguous, the Court was stating that it must interpret an unambiguous statute as written, unless the result of doing so is palpably absurd. The Court did not cite any authority for that statement.

None of the three cases cited—*Worley Highway District, Moon,* and *Herndon*—support that statement. In *Worley Highway District*, we said, " 'This Court has consistently adhered to the primary canon of statutory construction that where the language of the statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction.' " 98 Idaho at 928, 576 P.2d at 209 (quoting *State v. Riley*, 83 Idaho 346, 349, 362 P.2d 1075, 1076-77 (1961)). In *Moon*, we said, "where a statute or constitutional provision is plain, clear, and unambiguous, it 'speaks for itself and must be given the interpretation the language clearly implies.' " 97 Idaho at 596, 548 P.2d at 862 (quoting *State v. Jonasson,* 78 Idaho 205, 210, 299 P.2d 755, 757 (1956)). In *Herndon*, we said: "We must follow the law as written. If it is socially or economically unsound, the power to correct it is legislative, not judicial." 87 Idaho at 339, 393 P.2d at 37.

In the *Willys Jeep* case, the Court simply made a misstatement. If this Court were to conclude that an unambiguous statute was palpably absurd, how could we construe it to mean something that it did not say? Doing so would simply constitute revising the statute, but we do not have the authority to do that. The legislative power is vested in the senate and house of representatives, Idaho Const. art. III, § 1, not in this Court. As we said in *Berry v. Koehler*, 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962), "The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone."

We have recited the language from the *Willys Jeep* case or similar language numerous times, usually without even addressing whether we considered the unambiguous statute absurd as written. *See State v. Urrabazo*, 150 Idaho 158, 244 P.3d 1244 (2010); *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 247 P.3d 650 (2011); *Viking Constr., Inc. v. Hayden Lake Irrigation Dist.*, 149 Idaho 187, 233 P.3d 118 (2010); *State v. Pina*, 149 Idaho 140, 233 P.3d 71 (2010); *Kootenai Hosp. Dist. v. Bonner County Bd. of Comm'rs*, 149 Idaho 290, 233 P.3d 1212 (2010); *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 208 P.3d 289 (2009); *Federated Publ'ns, Inc. v. Idaho Business Review, Inc.*, 146 Idaho 207, 192 P.3d 1031 (2008); *State Dept. of Health and Welfare v. Hudelson*, 146 Idaho 439, 196 P.3d 905 (2008); *State v. Mubita*, 145 Idaho 925, 188 P.3d 867 (2008); *State v. Hensley*, 145 Idaho 852, 187 P.3d 1227 (2008); *In re Daniel W.*, 145 Idaho 677, 183 P.3d 765 (2008); *Mattoon v. Blades*, 145 Idaho 634, 181 P.3d 1242 (2008); *State v. Kimball*, 145 Idaho 542, 181 P.3d 468 (2008); *State v. Parkinson*, 144 Idaho 825, 172 P.3d 1100 (2007); *State v. Grazian*, 144 Idaho 510, 164 P.3d 790 (2007); *In re Estate of Miller*, 143 Idaho 565, 149 P.3d 840 (2006); *Kirkland v. State*, 143 Idaho 544, 149 P.3d 819 (2006); *Employers Res. Mgmt. Co. v. Department of Ins.*, 143 Idaho 179, 141 P.3d 1048 (2006); *McNeal v. Idaho Pub. Utils. Comm'n*, 142 Idaho 685, 132 P.3d 442 (2006); *Rahas v. Ver Mett*, 141 Idaho 412, 111 P.3d 97 (2005); *Kootenai Med. Ctr. v. Bonner County Comm'rs*, 141 Idaho 7, 105 P.3d 667 (2004); *State v. Thompson*, 140 Idaho 796, 102 P.3d 1115 (2004); *Garza v. State*, 139 Idaho 533, 82 P.3d 445 (2003); *Dyet v. McKinley*, 139 Idaho 526, 81 P.3d 1236 (2003); *State v. Schwartz*, 139 Idaho 360, 79 P.3d 719 (2003); *Inama v. Boise County ex rel. Bd. of Comm'rs*, 138 Idaho 324, 63 P.3d 450 (2003); *State v. Jeppesen*, 138 Idaho 71, 57 P.3d 782 (2002); *Ahles v. Tabor*, 136 Idaho 393, 34 P.3d 1076 (2001); *State v. Daniel*, 132 Idaho 701, 979 P.2d 103 (1999); *State v. Knott*, 132 Idaho 476, 974 P.2d 1105 (1999); *Idaho Dep't of Health and Welfare v. Jackman*, 132 Idaho 213, 970 P.2d 6 (1998); *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 851 P.2d 961

8

(1993); *In re Application for Permit No. 36-7200*, 121 Idaho 819, 828 P.2d 848 (1992); *Sherwood v. Carter*, 119 Idaho 246, 805 P.2d 452 (1991); *George W. Watkins Family v. Messenger*, 118 Idaho 537, 797 P.2d 1385 (1990); *In re Miller*, 110 Idaho 298, 715 P.2d 968 (1986); and *Parker v. Wallentine*, 103 Idaho 506, 650 P.2d 648 (1982).

In several cases, we have responded to arguments that the wording of an unambiguous statute would produce an absurd result, but we have never agreed with such arguments. *See Idaho Dep't of Health and Welfare v. Doe*, 151 Idaho 300, 256 P.3d 708 (2011); *State v. Doe*, 147 Idaho 326, 208 P.3d 730 (2009); *St. Luke's Reg'l Med. Ctr., Ltd. v. Board of Comm'rs*, 146 Idaho 753, 203 P.3d 683 (2009); *Glaze v. Deffenbaugh*, 144 Idaho 829, 172 P.3d 1104 (2007); *State v. Yzaguirre*, 144 Idaho 471, 163 P.3d 1183 (2007); *Driver v. SI Corp.*, 139 Idaho 423, 80 P.3d 1024 (2003); *State v. Rhode*, 133 Idaho 459, 988 P.2d 685 (1999); and *Moses v. Idaho State Tax Comm'n*, 118 Idaho 676, 799 P.2d 964 (1990).

Thus, we have never revised or voided an unambiguous statute on the ground that it is patently absurd or would produce absurd results when construed as written, and we do not have the authority to do so. "The public policy of legislative enactments cannot be questioned by the courts and avoided simply because the courts might not agree with the public policy so announced." *State v. Village of Garden City*, 74 Idaho 513, 525, 265 P.2d 328, 334 (1953). Indeed, the contention that we could revise an unambiguous statute because we believed it was absurd or would produce absurd results is itself illogical. "A statute is ambiguous where the language is capable of more than one reasonable construction." *Porter v. Board of Trustees, Preston School Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004). An unambiguous statute would have only one reasonable interpretation. An alternative interpretation that is unreasonable would not make it ambiguous. *In re Application for Permit No. 36-7200*, 121 Idaho 819, 823-24, 828 P.2d 848, 852-53 (1992). If the only reasonable interpretation were determined to have an absurd result, what other interpretation would be adopted? It would have to be an unreasonable one. We therefore disavow the wording in the *Willys Jeep* case and similar wording in other cases and decline to address Plaintiffs' argument that Idaho Code section 39-1392b is patently absurd when construed as written.

## IV.

### Pursuant to Idaho Code Section 39-1392e(f), Did the Filing of this Lawsuit

**Waive Defendants' Right to Assert the Peer Review Privilege?**

Plaintiffs contend that pursuant to Idaho Code section 39-1392e(f), the peer review privilege was waived in its entirety by the filing of this lawsuit. That statute provides:

> If any physician, emergency medical services personnel, patient, person, organization or entity whose conduct, care, chart, behavior, health or standards of ethics or professional practice is the subject of investigation, comment, testimony, dispositive order of any kind or other written or verbal utterance or publication or act of any such health care organization or any member or committee thereof in the course of research, study, disciplinary proceeding or investigation of the sort contemplated by this act, makes claim or brings suit on account of such health care organization activity, then, in the defense thereof, confidentiality and privilege shall be deemed waived by the making of such claim, and such health care organization and the members of their staffs and committees shall be allowed to use and resort to such otherwise protected information for the purpose of presenting proof of the facts surrounding such matter, and this provision shall apply whether such claim be for equitable or legal relief or for intentional or unintentional tort of any kind and whether pressed by a patient, physician, emergency medical services personnel, or any other person, but such waiver shall only be effective in connection with the disposition or litigation of such claim, and the court shall, in its discretion, enter appropriate orders protecting, and as fully as it reasonably can do so, preserving the confidentiality of such materials and information.

Specifically, Plaintiffs rely upon that portion of the statute providing as follows:

> If *any physician* ... whose conduct [or] care ... is the subject of investigation ... makes claim or *brings suit* on account of such health care organization activity, then, in the defense, thereof, *confidentiality and privilege shall be deemed waived by the making of such claim*, and such health care organization and the members of their staffs and committees shall be allowed to use and resort to such otherwise protected information for the purpose of presenting proof of the facts surrounding such matter . . . . (Emphasis theirs.)

They argue that if the health care organization has the option of using otherwise privileged information when a physician brings a claim against it, then the physician bringing the lawsuit should also have that option.

As stated above, Idaho Code section 39-1392e(f) applies to this lawsuit. The waiver provision states that when a physician, who has been the subject of "investigation of the sort contemplated by this act, makes claim or brings suit on account of such health care organization activity, then, in the defense thereof, confidentiality and privilege shall be deemed waived by the making of such claim." The key language in this provision is:

10

then, *in the defense thereof*, confidentiality and privilege shall be deemed waived by the making of such claim, *and such health care organization and the members of their staffs and committees shall be allowed to use* and resort to *such otherwise protected information for the purpose of presenting proof of the facts surrounding such matter . . . .* (Emphasis added.)

When determining the plain meaning of a statute, "effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant." *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936). If the bringing of an action by the physician who was investigated or disciplined waived the peer review privilege of the defendants in that action, then the emphasized words above would be meaningless. In fact, to have the statute so state, it would be necessary to delete the emphasized words so that the wording would simply provide that if the physician investigated or disciplined "makes claim or brings suit on account of such health care organization activity, then confidentiality and privilege shall be deemed waived by the making of such claim."

To give effect to all of the words in the statute when construing it, the physician investigated or disciplined, the health care organization, and the members of such organization's staff and committees all have the right to assert the peer review privilege. By bringing the lawsuit, the physician waives his or her right to assert the privilege. The health care organization and the members of its staff and committees who are defendants in the lawsuit can then elect also to waive the privilege in order to defend the lawsuit. The statute further provides that "such waiver shall only be effective in connection with the disposition or litigation of such claim, and the court shall, in its discretion, enter appropriate orders protecting, and as fully as it reasonably can do so, preserving the confidentiality of such materials and information." I.C. § 39-1392e(f). By bringing the lawsuit, the physician does not waive the privilege for purposes unconnected with the lawsuit, nor does the health care organization or the members of its staff and committees do so if they elect to rely upon privileged information in defense of the lawsuit.

Finally, the statute provides that the right of the health care organization or the members of its staff or committees to use privileged information in defense of the lawsuit, "shall apply whether such claim be for equitable or legal relief or for intentional or unintentional tort of any kind." I.C. § 39-1392e(f). That provision clearly shows that Idaho Code section 39-1392e(f) is not limited in its application to medical malpractice actions.

11

## V.

**Can This Court Address the Scope of Idaho Code Section 39-1392c?**

Idaho Code section 39-1392c provides in part, "The furnishing of information or provision of opinions to any health care organization or the receiving and use of such information and opinions shall not subject any health care organization or other person to any liability or action for money damages or other legal or equitable relief." Plaintiffs ask us to address the scope of that statute, although they admit that the district court did not address it in its decision.

We granted a permissive appeal only from the district court's "Order Re: Motion To Compel/Protective Order" filed on February 11, 2010. That order denied Plaintiffs' motion to compel discovery and granted Defendants' motion for a protective order regarding that requested discovery. "Because there was not a ruling on that issue by the district court, we will not address it on appeal." *Brian and Christie, Inc. v. Leishman Elec., Inc.*, 150 Idaho 22, ___, 244 P.3d 166, 173 (2010).

## VI.

### Conclusion

We affirm the order of the district court entered on February 11, 2010, granting Defendants' motion for a protective order and denying Plaintiffs' motion to compel discovery. We award costs on appeal to respondents.

Chief Justice BURDICK, Justice HORTON and Justice Pro Tem TROUT **CONCUR.**

J. JONES, Justice, concurring in the result of Part II, specially concurring in Part III, and concurring in Parts IV and V.

I concur in the result reached by the Court in Part II—that I.C. § 39-1392b applies in this case—but would not necessarily agree that the statute prohibits discovery in all instances where a physician alleges a peer review proceeding is being misused. I agree with the Court's conclusion in Part III that the Court does not have the authority to modify an unambiguous statute, but I do

12

not necessarily believe that the Legislature has the last word with regard to the subject of evidentiary privileges. I concur in Part IV and Part V.

The Court correctly concludes that the privilege contained in I.C. § 39-1392b applies to all types of peer review proceedings, including hospital credentialing and disciplinary proceedings. According to I.C. § 39-1392f, peer review includes activities of medical staff to improve "the care of patients in the hospital," as well as the "quality and necessity of care provided to patients." Plaintiffs' contention that the privilege only applies to medical malpractice claims is untenable.

As with any privilege, the peer review privilege must be strictly construed and applied. As the U.S. Supreme Court stated in *Jaffee v. Redmond*:

> When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule. Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

518 U.S. 1, 9 (1996) (quotation marks and citations omitted). The Court continued, "Our cases make clear that an asserted privilege must also 'serv[e] public ends.'" *Id*. at 11. If the asserted privilege is being misused, such as to serve some interest not within the public policy ends for which it was intended, the privilege should not apply.

The Legislature made the following public policy statement with respect to the peer review privilege:

> To encourage research, discipline and medical study by certain health care organizations for the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the state of Idaho, certain records of such health care organizations shall be confidential and privileged as set forth in this chapter.

I.C. § 39-1392. The Legislature is not the only branch of Idaho's government that has adopted a public policy favoring the protection of peer review proceedings from public disclosure in order to facilitate the frank exchange of information. This Court has adopted its own privilege designed to protect the confidentiality of the proceedings of in-hospital medical committees. Rule 519 of the Idaho Rules of Evidence prevents the disclosure of confidential communications "made in connection with a proceeding for research, discipline, or medical study . . . for the

13

purpose of reducing morbidity and mortality, or improving the standards of medical practice for health care." I.R.E. 519(a)(4). The proceedings at issue in this case are clearly within the contemplated coverage of both the legislative enactment and the judicial rule.

However, like any privilege, the party invoking the privilege must make an initial showing that the proceeding at hand is within the intended coverage of the privilege. The person challenging the privilege must then make a credible showing that the privilege does not apply. That may be done by showing that the person or entity claiming the privilege does not qualify under the terms of the legislative enactment or judicial rule, but it may also be done by making a credible showing that the privilege is being misused. As stated in 81 Am. Jur. 2d Witnesses § 537 (2011):

> Such statutorily created privilege will be narrowly construed by the courts. In construing the peer-review privilege granted to healthcare providers, a court must balance privilege against a plaintiff's right to due process and the judicial need for the fair administration of justice. The view has been followed that the broad privilege granted to a hospital by a state's peer review law extended to any and all matters related to the peer-review process pursuant to which a physician's staff privileges were revoked, subject to the physician's right to conduct discovery for the limited purpose of investigating the committee members' good faith, malice, and reasonable knowledge or believe in order to carry his burden in opposing their qualified immunity.

Public policy dictates that when peer review proceedings are being conducted in good faith, all documents and proceedings should be exempt from disclosure. However, if it can be shown by credible evidence by a physician aggrieved by the proceeding that it is not being conducted in good faith, such as for anti-competitive objectives, the privilege simply does not apply. The privilege is not intended to apply to bad faith proceedings. Rather, as the Legislature has stated in I.C. § 39-1392, it is intended for "the purposes of reducing morbidity and mortality, enforcing and improving the standards of medical practice in the State of Idaho." Advancement of anti-competitive practices or other improper agendas does not serve such purposes.

An analogy to the federal act pertaining to peer review, or "professional review actions," is apt. The Health Care Quality Improvement Act of 1986 was enacted for the purpose of "encouraging good faith professional review activities." Pub. L. No. 99-660, 100 Stat. 3743. The Act is codified beginning at 42 U.S.C. § 11101. The Act provides broad immunity from damage claims for persons and entities conducting professional review actions. 42 U.S.C. § 11111(a).

However, in order to obtain such immunity, the actions of a professional review body must meet all of the standards specified in 42 U.S.C. § 11112(a). That subsection provides:

> (a) In General—For purposes of the protection set forth in [42 U.S.C. § 11111(a)], a professional review action must be taken—
> (1) in the reasonable belief that the action was in the furtherance of quality health care,
> (2) after a reasonable effort to obtain the facts of the matter,
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting [specified requirements for notice and hearing].
>
> A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in [42 U.S.C. § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.

It seems to logically follow that, if a peer review panel's immunity from a damage claim is lost for failure to pursue a peer review action in the furtherance of quality health care, the immunity from disclosure of such panel's proceedings should also be lost for such a failure. Where a proceeding is being conducted, not for the purpose of improving the quality of health care, but, rather, for the purpose of eliminating competition, conducting a vendetta, or some other reason not embodied within the public policy supporting the privilege, it should be lost.

Of interest is the fact that the Hospital's Fair Hearing Plan specifically adopts the provisions of the Health Care Quality Improvement Act. Section 22 of Chapter XII of the Medical Staff Policy & Plans states: "This Fair Hearing Plan will be construed, and at all times will be consistent with, the Health Care Quality Improvement Act and its implementing regulations (HCQIA), and in the event of a conflict, HCQIA will control."

I would hold that the Plaintiffs could overcome the privilege with a credible showing that the Hospital was using the peer review proceedings for an improper purpose, such as the Plaintiffs allege. The problem for Plaintiffs is that they have not made a credible showing that such is the case. The Plaintiffs allege that the peer review proceedings were merely a ruse to stifle competition by eliminating Dr. Verska as a competitor against the Hospital's in-house spinal surgery group. Plaintiffs have failed to present any credible evidence to support that contention. Nor has it been shown that the Hospital did not substantially comply with the

15

standards adopted by the Hospital for its Fair Hearing Plan, specifically the HCQIA requirements.

On the other hand, the record shows that the proceedings were instituted for valid reasons. It would not have been responsible for the Hospital to have ignored the fact that Dr. Verska had had his hospital privileges at St. Luke's Regional Medical Center curtailed. Subsequent review of the doctor's charts indicated the need for further study. The fact that he had five cases reported to the National Practitioner Data Bank could not have been properly disregarded by the Hospital. It certainly appears that the proceeding was initiated and pursued in "furtherance of quality health care."

The Plaintiffs allege that information was improperly disclosed by at least one peer review panel member involved in the proceedings. It is not clear whether the Plaintiffs asserted to the district court that the privilege had been waived by virtue of that fact.[2] Certainly a party asserting a privilege can waive it by voluntary disclosure, as we have provided in I.R.E. 510:

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.

Although I.R.E. 510 deals specifically with waiver of privileges provided for in the Idaho Rules of Evidence, there is no reason why we should not apply it equally to legislatively-created privileges. However, the Plaintiffs have failed to raise this particular waiver issue on appeal. Presumably, they can do so on remand.

Because the Plaintiffs have failed to make a sufficient showing that the privilege should not apply in this case, the district court correctly ruled with regard to the Plaintiffs' request to conduct discovery and this Court reached the correct conclusion in affirming that holding.

With regard to Part III of the opinion, I agree that the Court cannot modify an unambiguous statute. Our job is to determine whether a legislatively-created privilege applies in a particular fact situation. However, I would observe that the Court has inherent constitutional powers to control court procedures, including the conduct of discovery, and to implement rules

---

[2] Plaintiffs do claim on appeal that the privilege was waived, but their argument is premised upon I.C. § 39-1392b(f). The Court correctly disposes of that contention in Part IV of the Opinion.

16

regarding the admissibility of evidence, including the power to establish privileges in furtherance of public policy objectives. Indeed, the Court has established a specific privilege entitled "Hospital, in-hospital medical staff committee and medical society privilege." I.R.E. 519. That privilege covers much of the same ground as the legislatively-enacted privilege. Oddly, neither party has cited I.R.E. 519 to the Court. Because I.C. § 39-1392b does not appear to conflict with the Court's rule, application of that statute in this proceeding is not inappropriate.