979 P.2d 103

**STATE of Idaho, Plaintiff–Respondent,**

v.

**David R. DANIEL, Defendant–Appellant.**

No. 24306.

Supreme Court of Idaho,
Idaho Falls, October, 1998 Term.

Feb. 22, 1999.

Rehearing Denied June 9, 1999.

Gilman J. Gardner, Bonneville County Public Defender, Cindy L. Campbell, Deputy Public Defender, Idaho Falls, for appellant. Cindy L. Campbell argued.

Hon. Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for respondent. Kimberly A. Coster argued.

TROUT, Chief Justice.

David R. Daniel (Daniel) appeals from his conviction for aggravated driving while under the influence of alcohol. Daniel was involved in a two-vehicle accident. Tests, taken more than two and one-half hours after the accident showed Daniel's blood alcohol concentration (BAC) to be well below the legal limit. At the time of the accident, I.C. § 18–8004(1) prohibited individuals with a BAC of .10 or above from driving. On appeal, Daniel claims the district judge should have granted his motion to dismiss because I.C. § 18–8004(2) prohibits prosecution where the BAC test results are below the legal limit. Daniel also argues that the district court erred in allowing the State to introduce evidence of the presence of alcohol in his system, in denying his motion to dismiss for late disclosure of witnesses, and in denying his motion for acquittal under Idaho Criminal Rule 29.

## I.

## BACKGROUND AND PROCEDURAL HISTORY

On September 1, 1996, at approximately 11:25 p.m., Daniel, driving on U.S. Highway 26 in Bonneville County, Idaho, collided head-on with a pickup driven by Greg Dehlin. The accident injured Dehlin and his passenger as well as Daniel and his passenger. After the accident, Daniel was transported by Life Flight to Eastern Idaho Regional Medical Center (EIRMC) in Idaho Falls. At the request of a police officer and with Daniel's consent, an EIRMC employee administered a blood test at 2:10 a.m. on September 2, 1996, showing Daniel's BAC to be .06. A second blood test taken from Daniel at 3:20 a.m. on September 2, 1996, indicated a BAC of .03. The record does not reflect the reason for the delay in administering the BAC tests.

The State commenced this action, filing a criminal complaint on January 29, 1997, charging Daniel with one count of aggravated driving while under the influence of alcohol and alleged:

> The defendant, DAVID RAY DANIEL, on or about September 1, 1996, in the County of Bonneville, State of Idaho, did unlawfully drive or was in actual physical control of a 1981 Grey Ford Bronco while under the influence of alcohol or, in the alternative, while having a blood alcohol concentration of .10 percent or more, and caused a motor vehicle collision, thereby causing great bodily harm and permanent disability to Greg Dehlin and Rebecca Dehlin.

On February 27, 1997, Daniel filed a Motion to Dismiss pursuant to I.C. § 18–8004(2). While the BAC test results obtained from EIRMC were ultimately held inadmissable at trial, Daniel stipulated to admitting the test results at his preliminary hearing. Idaho Code § 18–8004(4) requires BAC tests to be administered by a laboratory or method approved by the Idaho Department of Law Enforcement. Neither party raised this issue in conjunction with Daniel's motion to dismiss and, thus, we review the ruling on the motion without regard to the later holding.

The State filed a motion to amend the complaint on April 7, 1997, representing that "the nature and extent of the injuries caused in the accident require separate counts for each victim." The motion to amend was approved on April 8, 1997. The State's amended criminal complaint charged Daniel with three counts of aggravated driving while under the influence of alcohol. On April 16, 1997, the magistrate court issued its memorandum decision denying Daniel's motion to dismiss and bound Daniel over for arraignment and trial.

On May 12, 1997, Daniel filed a second motion to dismiss on the same grounds. The district judge denied the motion ruling that I.C. § 18–8004(2) must be read to allow the State take the BAC results as determined by the test and then extrapolate them back to establish the defendant's BAC at the time of the accident. The district judge reasoned that the police cannot administer a blood, urine, or breath test while a suspect is in physical control or driving the vehicle. Consequently, "I.C. § 18–8004(2) must contemplate that a subsequent blood, urine, or breath test may be subject to retrograde extrapolation to show that person's blood alcohol concentration at the time when that person was driving."

At trial, the State could not establish that EIRMC was approved by the Idaho Department of Law Enforcement as a laboratory able to analyze a suspect's blood alcohol level. Consequently, the district judge did not allow the State to present testimony concerning the specific test results. As a result, the State could not present extrapolation evidence and proceeded to present its case under the alternate theory provided by I.C. § 18–8004(2). That is, when a test result is ruled unreliable or inadmissible, the State may prove its case with "other competent evidence." One day before trial the State filed an amended witness list adding the names of two EIRMC employees. The district judge allowed the two additional witnesses to testify that a blood test was administered and that alcohol was present in Daniel's blood without mention of the specific test results. On September 4, 1997, following the jury trial, Daniel was convicted of

three counts of aggravated driving while under the influence. The district judge denied Daniel's post-trial motion for acquittal and sentenced Daniel to one to four years of imprisonment on each count with each sentence running concurrently.

## II.

### IDAHO CODE § 18–8004(2)

■ Whether the district judge properly interpreted I.C. § 18–8004(2) is a question of law. In reviewing questions of law this Court exercises free review. *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Idaho Code § 18–8004(1), as it existed at the time of Daniel's accident, made it unlawful for any person with a BAC above .10 to drive or be in physical control of a motor vehicle. However, at the time of Daniel's accident, I.C. § 18–8004(2) expressly provided that:

> Any person having an alcohol concentration of less than 0.10 ... as shown by analysis of his blood, urine, or breath, by a test requested by a police officer shall not be prosecuted for driving under the influence of alcohol, except as provided in subsection (3), subsection (1)(b) or subsection (1)(d) of this section.

In this case the police requested a blood test more than two hours after the accident. Daniel consented. The test results showed Daniel's BAC to be .06. A test taken about an hour after the first test reflected a BAC of .03. Because none of the exceptions apply, a plain reading of the statute reveals that Daniel should not have been prosecuted and that the district judge erred in denying Daniel's motion to dismiss.

The State argues that this Court must read I.C. § 18–8004(2) in conjunction with § 18–8004(1) to ascertain its true meaning. That is, § 18–8004(2) only prohibits the state from prosecuting a suspect when his BAC is less than .10 *at the time of driving or the accident.* Otherwise, the purpose of Idaho's DUI law would be frustrated and absurd consequences could result.

■ Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. McCoy*, 128 Idaho 362, 365, 913 P.2d 578, 581 (1996). Unless the result is palpably absurd, this Court assumes that the legislature meant what is clearly stated in the statute. *Miller v. State*, 110 Idaho 298, 299, 715 P.2d 968, 969 (1986). However, where ambiguity exists as to the elements or potential sanctions of a crime, this Court will strictly construe the criminal statute in favor of the defendant. *State v. Thompson*, 101 Idaho 430, 437, 614 P.2d 970, 977 (1980).

■ The language of I.C. § 18–8004(2) is plain and unambiguous. It states that where a blood, urine, or breath test, administered at the request of a police officer shows that the suspect's BAC is less than .10, that person shall not be prosecuted. Contrary to the State's position, the statute does not prohibit prosecution **only** where the test, in conjunction with expert testimony extrapolating the test results back to the time of driving or the accident, shows that the suspect's BAC level was below .10.

While this statute requires law enforcement officers to act expeditiously in obtaining BAC results on suspected drunk drivers, even in the face of serious injuries suffered by the driver, the State's position is even more problematic. The Idaho Legislature enacted § 18–8004(2) to encourage individuals suspected of driving under the influence to submit to an officer's request for a BAC test. The statute encourages motorists, who believe their BAC to be below the limit, to submit to a test and avoid prosecution. Section 18–8004(2) provides another incentive to take a test by allowing the State to prosecute "on other competent evidence" when a driver refuses to take a BAC test. If the State were allowed to present extrapolation evidence to prove a suspect's BAC was above the legal limit although the test, requested by the police, showed the suspect's BAC to be below the limit, that incentive would be destroyed. An officer could question a suspect as to how long he had been driving, administer the test, and if the test came out below the limit, the State could provide extrapolation evidence to establish that the suspect's BAC must have been above the limit

at the time he got into his vehicle. That is clearly prohibited by the express terms of § 18–8004(2).

### III.

### CONCLUSION

For the reasons stated above, the district court erred in denying Daniel's motion to dismiss. Because this conclusion is dispositive, this Court need not address Daniel's other allegations of error. Therefore, the district court's sentence and judgment of conviction are hereby reversed and this case is remanded for further proceedings.

Justice SCHROEDER and Justice Pro Tem JOHNSON, concur.

Justice SILAK, Dissenting.

I respectfully dissent from the Court's opinion because, in my view, the interpretation of I.C. § 18–8004(2) adopted by the majority is an unreasonable reading of the statute which frustrates the clear intent of the legislature to insure that the highways are safe for travel by law-abiding citizens. I would interpret I.C. § 18–8004(2) to permit retrograde extrapolation of blood alcohol content (BAC) test results to calculate a person's BAC at the time that person was driving.

Section 18–8004(1)(a), as it stood at the time of Daniel's accident, states that "[i]t is unlawful for any person ... *who has* an alcohol concentration of 0.10, ... or more ... to drive or be in actual physical control of a motor vehicle." *Id.* Statutes must be interpreted to mean what the legislature intended for the statute to mean. *See Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991). Moreover, a statute must be construed as a whole. *See id.* A reading of I.C. § 18–8004(2) in the context of the entire statute makes clear that the legislature intended to make it a crime to drive *while having* a blood alcohol content of 0.10 or higher.

The majority opinion fails to account for the unreasonable results of an overly narrow interpretation of I.C. § 18–8004(2). This Court has observed:

Naturally, samples of blood, breath or other bodily substances obtained at the time of the accident would be ideal. However, extraction of the samples often requires a trip to a hospital or other medical facility and the exigencies of accidents may require a further delay. Frequently this works to the advantage of the defendant since the blood alcohol level is generally recognized to decline over time at a fairly predictable pace.

*State v. Sutliff,* 97 Idaho 523, 524, 547 P.2d 1128, 1129 (1976). Because testing cannot practically be done while someone is driving or immediately upon the happening of an offense, I.C. § 18–8004 must contemplate that a subsequent test may be subject to retrograde extrapolation to calculate that person's BAC at the time that person was driving. By interpreting I.C. § 18–8004(2) to prohibit the use of BAC test results where the test is below 0.10 in all cases, police officers responding to alcohol-related accidents will now be forced to choose between addressing emergency medical needs of accident victims and obtaining BAC test results that can be used in the prosecution of an alcohol-impaired driver. Thus, because officers in this case chose to address the medical needs of the accident victims and Daniel, the officers are prevented from bringing an intoxicated driver to justice. This cannot be the result intended by the legislature.

Secondly, the majority supports its narrow interpretation of I.C. § 18–8004 by stating that the purpose of I.C. § 18–8004(2) is to encourage individuals suspected of driving under the influence to submit to an officer's request for a BAC test. However, I.C. § 18–8004(2) was enacted not to provide an incentive to submit to a BAC test, but rather to establish a level of blood alcohol content above which driving is unacceptable. The legislature has already provided a compelling incentive to submit to the BAC test by providing for the seizure, and potential suspension, of the driver's license for refusal to submit to the test. *See* I.C. § 18–8002(4) (1997).

The result that follows from the majority's interpretation of I.C. § 18–8004(2) is to provide an incentive *not* to submit to the BAC

test. Under the majority's narrow reading of the statute, if a suspected motorist can delay taking the BAC test long enough, the motorist will benefit from the statute's bar to prosecution. Such an interpretation will frustrate the intent of the legislature, reward recalcitrance, and encourage delay in submitting to the BAC test.

Justice WALTERS concurs in dissent.