**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42390**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 52** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: August 4, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **TRICIA FRANKLIN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Boise County. Hon. Patrick H. Owen, District Judge.

Order denying motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Tricia Franklin appeals from the district court's order denying her motion to suppress. We reverse the order and remand the case for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Tatilian encountered Franklin walking across a street toward a saloon. She appeared intoxicated and smelled of alcohol. Later that day, Officer Tatilian responded to a report of an intoxicated driver operating a 1990s Ford pickup and driving away from the saloon where the officer had contacted Franklin. Officer Tatilian located the pickup parked at a local motel and found Franklin and her boyfriend, Jason Snowball, in one of the motel's rooms. Franklin and Snowball both admitted they were intoxicated and Officer Tatilian warned them not to drive while they were intoxicated.

1

At approximately 10:12 p.m., dispatch asked Officer Tatilian to respond to a single-vehicle accident involving a 1990s Ford pickup. When Officer Tatilian arrived at the scene of the accident at 10:47 p.m., the fire chief was already there. The fire chief informed Officer Tatilian that Franklin was injured in the accident and taken to the hospital. The fire chief also told Officer Tatilian that Franklin appeared intoxicated, smelled of alcohol, and said she was the vehicle's driver and only occupant.

Officer Tatilian located Snowball's wallet at the scene. Thinking Snowball may have been involved in the accident, Officer Tatilian searched for other victims but did not find any other victims at the scene. Officer Tatilian had radios in his vehicle and on his person that were working while at the scene of the accident. The officer left at approximately 11:55 p.m. and went back to the motel where he confirmed Snowball was not involved in the accident. The district court found that around midnight, Officer Tatilian asked dispatch to send a phlebotomist and another officer to draw Franklin's blood at the hospital.

A phlebotomist and Officer Rogers were sent to the hospital to obtain Franklin's blood. Franklin arrived at the hospital at 12:20 a.m., shortly after Officer Rogers. At the hospital, Franklin physically refused a blood draw for law enforcement purposes. However, the hospital nurse was drawing Franklin's blood for treatment purposes. Through the phlebotomist, Officer Rogers had the hospital nurse fill two tubes with Franklin's blood. The nurse completed the blood draw at 12:40 a.m. The test of Franklin's blood revealed a blood alcohol content (BAC) of .236.

The State charged Franklin with felony driving under the influence (DUI), Idaho Code §§ 18-8004 and 18-8005(6), and misdemeanor driving without privileges, I.C. § 18-8001(4). Franklin moved to suppress evidence of the results of the blood test. The district court denied the motion, holding implied consent and exigent circumstances justified the warrantless blood draw. Franklin entered a conditional guilty plea, reserving the right to appeal the denial of her motion to suppress, and the State dismissed the driving without privileges charge. Franklin timely appeals from the denial of her motion to suppress.

## II.

## ANALYSIS

Franklin argues the district court erred in denying her motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is

2

challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Franklin raises three issues on appeal. First, she argues she withdrew her consent under current Idaho law. Accordingly, she asserts she did not impliedly consent to the warrantless blood draw. The State concedes that Franklin withdrew her consent under "recent Idaho Supreme Court decisions" and the implied consent exception is "inapplicable under the facts of this case." Therefore, we need not address this issue. Second, Franklin argues the district court's factual finding that Officer Tatilian requested the blood draw around midnight was clearly erroneous. Finally, she asserts exigent circumstances did not exist to justify the warrantless blood draw.

## A. Factual Finding

Franklin asserts the district court's factual finding that Officer Tatilian requested the blood draw around midnight was clearly erroneous. On appeal, this Court defers to the trial court's findings of fact unless they were clearly erroneous. *State v. Shafer*, 144 Idaho 370, 374, 161 P.3d 689, 693 (Ct. App. 2007). Findings are clearly erroneous when they are not supported by substantial evidence. *Id.* Evidence is substantial if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Mitchell*, 130 Idaho 134, 135, 937 P.2d 960, 961 (Ct. App. 1997). Substantial evidence may exist even when there is conflicting evidence. *Severson*, 147 Idaho at 712, 215 P.3d at 432. At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Franklin argues the district court's finding that Officer Tatilian requested the blood draw around midnight contradicts the phlebotomist's and Officer Tatilian's[1] testimony that the request occurred around 11:17 p.m. In finding Officer Tatilian requested the blood draw around midnight, the district court resolved a factual conflict between the testimony of the phlebotomist and Officer Tatilian's and Officer Rogers' testimony. Officer Rogers testified that Officer Tatilian requested the blood draw around midnight. In its order denying Franklin's motion to suppress, the court stated: "There is some inconsistency in the evidence about when Tatilian requested a blood draw. The Court finds that Rogers['] account is credible."

Substantial evidence supported the district court's finding that Officer Tatilian requested the blood draw around midnight. The district court based this finding on Officer Rogers' testimony, which the court found credible. A reasonable trier of fact could accept and rely on Officer Rogers' testimony in determining when Officer Tatilian requested the blood draw. Thus, substantial evidence supported the district court's finding that Officer Tatilian requested the blood draw around midnight. The district court acted within its power by resolving this factual conflict and finding Officer Rogers' testimony credible.

B. **Exigent Circumstances**

Franklin next asserts, based on the totality of circumstances, exigent circumstances did not exist to justify the warrantless blood draw.[2] The United States and Idaho Constitutions

---

[1]     Franklin asserts Officer Tatilian adopted 11:17 p.m. as the time he requested the blood draw. In response to the prosecutor's question about what time he requested the blood draw, Officer Tatilian stated: "I don't recall a specific time off the top of my head, no." The prosecutor then asked, "If the dispatch log indicates 11:17, would that be accurate?" Officer Tatilian responded, "It would be within a minute or two of me calling, yes."

[2]     In response to this argument, the State argues there was no search within the meaning of the Fourth Amendment. According to the State, only a government agent's action can constitute a search under the Fourth Amendment. Thus, the State asserts there was no search within the meaning of the Fourth Amendment because the hospital nurse that drew Franklin's blood was not a government agent. We are not convinced by this argument. The hospital nurse and phlebotomist were clearly acting under the direction of Officer Rogers in performing the warrantless blood draw. Moreover, the State effectively conceded there was a warrantless search under the Fourth Amendment in the court below by agreeing that the State had the burden to show the search fell within a valid exception to the warrant requirement.

4

prohibit unreasonable searches and seizures of persons or property.[3] Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011). Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Therefore, warrantless forced blood draws are presumptively unreasonable under the Fourth Amendment. *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013); *State v. Wulff*, 157 Idaho 416, 419, 337 P.3d 575, 578 (2014). The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement. *Weaver*, 127 Idaho at 290, 900 P.2d at 198; *Smith*, 152 Idaho at 118, 266 P.3d at 1223.

One of the well-recognized warrant requirement exceptions involves exigency. A warrant is not required if "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)). Whether an exigency exists is based on the totality of circumstances, which is analyzed case-by-case. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1556; *Wulff*, 157 Idaho at 420, 337 P.3d at 579. A warrantless search under the exigent circumstance exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion. *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). The exigent circumstance exception does not apply where there is time to secure a warrant. *State v. Robinson*, 144 Idaho 496, 501, 163 P.3d 1208, 1213 (Ct. App. 2007).

For instance, an officer is justified in performing a warrantless blood draw when he "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770 (quotation marks and citations omitted). The destruction of evidence in *Schmerber* was the natural dissipation of the defendant's BAC because the defendant was suspected of drunk driving. *Id.* at 770-71. The Supreme Court implied, however, that the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every

---

[3] Franklin does not argue the Idaho Constitution affords greater protection, so this Court follows the analysis pursuant to the Fourth Amendment to the United States Constitution.

case. *Id.* at 770. The Court based its ruling on other factors relevant to the delay in securing a warrant in that case, such as the need to investigate the scene of a car accident and transport the defendant to a hospital for injuries suffered in the accident. *Id.*

Recently, the Supreme Court explicitly held that the natural dissipation of alcohol in the bloodstream does not categorically support a finding of exigent circumstances. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563. Rather, the natural dissipation of alcohol in the bloodstream is one factor in the totality of circumstances that may support a finding of exigency in a specific case. *Id.* In *McNeely*, the defendant was involved in a routine DUI case and refused to submit to a breath test. *Id.* at ___-___, 133 S. Ct. at 1553-54. The officer did not attempt to secure a warrant before directing a lab technician to draw the defendant's blood. *Id.* at ___, 133 S. Ct. at 1554. The Court determined that the natural dissipation of alcohol in the defendant's bloodstream alone did not create an exigency. *Id.* at ___, 133 S. Ct. at 1561. However, the Court noted that the natural dissipation of alcohol in the bloodstream, combined with other factors, may delay law enforcement's ability to secure a warrant. Consequently, delays associated with "the need for the police to attend to a car accident[,] . . . the procedures in place for obtaining a warrant[,] or the availability of a magistrate judge," may establish an exigency. *Id.* at ___, 133 S. Ct. at 1568. Moreover, the Court stated that technological developments since *Schmerber* "that enable police officers to secure warrants more quickly . . . are relevant to an assessment of exigency" and there would be no exigency where the availability of other emergency personnel to attend to the demands of an investigation and respond to an accident enables an officer to seek a warrant. *Id.* at ___-___, 133 S. Ct. at 1561-63. Ultimately, the *McNeely* Court held that "in those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at ___, 133 S. Ct. at 1561.

In this case, the State argued in the district court that the delay attendant to obtaining an after-hours search warrant in Boise County created an exigent circumstance. The district court rejected this argument, stating:

> [T]he State has not presented facts that would have demonstrated that the effort [to obtain a warrant] would have resulted in a sufficient delay as to adversely affect the test results. There is a full-time magistrate in Boise County. The County has an elected prosecuting attorney who is a resident of the county. The

6

Sheriff's office certainly knows where the magistrate and prosecutor reside, and know how to contact each in the event of an emergency. Deputies in the field can contact dispatch and other officers by radio. The magistrate can be contacted personally, or by phone, either by the officer, or through assistance of dispatch. The Sheriff's office was also aware that there is always an on call prosecutor and magistrate in Ada County for after hours warrant applications. The State has failed to demonstrate that efforts to obtain a search warrant would have resulted in delays that could have adversely affected the investigation.

However, the court found that the delay attendant to Officer Tatilian's investigation, coupled with any further delay in obtaining a warrant, created an exigent circumstance. The court stated:

[C]onsidering all the circumstances, the Court does conclude that there are exigent circumstances excusing a warrant in this case. The accident was reported just prior to 10:12 p.m. The officer did not complete his investigation and conclude that Franklin was the driver until about midnight, almost two (2) hours after the accident. Because of this, the Court concludes that the additional time it would have taken to obtain a warrant would likely have resulted in such a delay as to potentially deprive the state of important evidence of alcohol concentration. The Court will find that the delay occasioned by the time necessary to conclude the investigation and determine that Franklin was the driver constitutes exigent circumstances. The process to obtain a warrant could not have begun until about midnight. The further delay in obtaining a warrant meant that there would have been a total delay of at least two (2) or three (3) hours. Such a delay would have permitted further elimination of alcohol that could have materially affected the State's ability to prove an alcohol concentration above the legal limit.

Similar to the *Schmerber* Court, the district court put considerable emphasis on delay caused by the investigation of the accident. However, in doing so, the court discounted the ultimate consideration in both *Schmerber* and *McNeely*: the delay necessary to *obtain a warrant*.

In *Schmerber*, the Supreme Court held that the State must prove that "the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770 (quotation marks and citations omitted). Because "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant" in that case. *Id.* at 770-771. Thus, the demands of *that particular* investigation made it impractical for police to obtain a warrant and therefore, created an exigency. *See id.*

In *McNeely*, the Court elaborated on the *Schmerber* holding and brought it into a modern context. The Court held that the existence of an exigency in a drunk-driving investigation turns on whether the "facts and circumstances of the particular case" made "obtaining a warrant impractical." *McNeely*, ___ U.S. at ___-___, 133 S. Ct. at 1560-61. Throughout the opinion, the

7

Court discussed factors that "may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search." *Id.* at ___, 133 S. Ct. at 1568. These factors include:

1. The availability of a magistrate;
2. The need for police to attend to and investigate a car accident;
3. The availability of other emergency personnel;
4. Technology that enables police to secure warrants quickly; and
5. The procedures for obtaining a warrant.

*Id.* at ___-___, 133 S. Ct. at 1560-69. Thus, the investigation of an accident is just one factor in the totality of circumstances that may delay law enforcement's ability to timely obtain a warrant and therefore, threaten the destruction of evidence and create an exigency. *See id.* at ___, 133 S. Ct. at 1560. Accordingly, the investigation of an accident does not necessarily cause undue delay in obtaining a warrant, and is not without consideration of the totality of the circumstances enough to threaten the destruction of evidence and create an exigency. *See McNeely*, ___ U.S. at ___, 133 S. Ct. at 1560.

In this case, Officer Tatilian's investigation of the accident did not delay law enforcement's ability to timely obtain a warrant and therefore, did not threaten the destruction of evidence and create an exigency. Although the district court found that "the process to obtain a warrant could not have begun until about midnight" because of Officer Tatilian's investigation, there is no evidence Officer Tatilian's investigation prevented him from seeking a warrant between 10:47 p.m.--when he arrived at the scene--and midnight when he concluded his investigation and sought the blood draw.[4] Emergency personnel were transporting Franklin to the hospital and Officer Tatilian could have called on other emergency personnel at the scene to assist him in his investigation while he sought a warrant. Further, Officer Tatilian had the technological ability to request a warrant while he was at the scene of the accident. The officer testified that he had radios in his vehicle and on his person that were working while at the scene of the accident. Finally, an objective assessment of the facts shows soon after arriving at the

---

[4] We note that although we upheld the district court's factual finding that Officer Tatilian requested the blood draw around midnight, that finding is irrelevant to whether exigent circumstances existed to justify the warrantless blood draw.

However, the district court's factual finding that "the process to obtain a warrant could not have begun until about midnight" is relevant to whether exigent circumstances existed to justify the warrantless blood draw and was not supported by substantial evidence in the record. Accordingly, we hold the district court's factual finding that "the process to obtain a warrant could not have begun until about midnight" was clearly erroneous.

scene and speaking with the fire chief, Officer Tatilian developed probable cause that Franklin was intoxicated and driving the pickup. The fire chief informed the officer that Franklin appeared intoxicated, smelled of alcohol, and said she was the vehicle's driver and only occupant. His further investigation was not necessary to obtain a warrant based on probable cause that Franklin was the pickup's driver. The officer simply did not seek a warrant because he did not think he needed one.

While Officer Tatilian's investigation of the accident did not, by itself, delay law enforcement's ability to timely obtain a warrant, our inquiry does not end there. We must consider whether, in the totality of circumstances, any delay necessary to obtain a warrant threatened the destruction of evidence, causing an exigency. *See McNeely* at ___-___, 133 S. Ct. at 1559-60; *Schmerber*, 384 U.S. at 770. No other factors in this case delayed law enforcement's ability to timely obtain a warrant, thus threatening the destruction of evidence and creating an exigency. The district court found that the procedures for obtaining a warrant would not have caused significant delay in obtaining a warrant. According to the court, officers in Boise County knew how to contact the county's prosecutor and full-time magistrate and Ada County's on-call prosecutor and magistrate for after-hours warrant applications and could do so through dispatch. Moreover, there is no evidence that anything prevented Officer Tatilian or Officer Rogers from seeking a warrant between midnight and the blood draw at 12:40 a.m. Although obtaining a warrant in such a small time frame might have been difficult, there are no facts in the record suggesting it would not have been possible. Again, the officers were operating under the assumption that a warrant was not necessary. Additionally, there is no evidence that any "further delay in order to secure a warrant" beyond 12:40 a.m. "would have threatened the destruction of evidence" that "is lost gradually and relatively predictably." *McNeely*, ___-___ U.S. at ___, 133 S. Ct. at 1561-63. Although the State cannot present retrograde extrapolation evidence in Idaho if the defendant's BAC is under .08 at the time of the blood draw, *see State v. Daniel*, 132 Idaho 701, 702, 979 P.2d 103, 104 (1999) *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011), Franklin's BAC was well over that threshold at 12:40 a.m. Because the district court found officers in Boise County could obtain a warrant relatively quickly, any further delay beyond 12:40 a.m. in order to secure a warrant likely would not have materially affected the State's ability to prove an alcohol concentration above .08.

9

Accordingly, we hold exigent circumstances did not exist to justify the warrantless blood draw because, in the totality of the circumstances, any delay necessary to obtain a warrant would not have threatened the destruction of evidence in this case.

## III.

## CONCLUSION

The district court's factual finding that Officer Tatilian requested the blood draw around midnight was not clearly erroneous. However, the court's factual finding that "the process to obtain a warrant could not have begun until about midnight" was clearly erroneous and exigent circumstances did not exist to justify the warrantless blood draw. The district court's order denying Franklin's motion to suppress is reversed and the case is remanded to the district court for further proceedings.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.