IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47610

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Filed: August 11, 2021 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | |
| SCOTT PATRICK DAMIANI, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Judgment of conviction for burglary, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Scott Patrick Damiani appeals from the district court's judgment of conviction for burglary. Damiani argues that the district court erred by denying his motion for judgment of acquittal. In the alternative, Damiani argues that the district court erred by improperly instructing the jury. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Damiani was charged with burglary, Idaho Code § 18-1401; petit theft, I.C. §§ 18-2403(1), 18-2407(2), 18-2409; and possession of a controlled substance, I.C. § 37-2732(c).[1] In relation to the burglary charge, the State alleged that the burglary occurred when Damiani "enter[ed] into a certain room, to-wit: the work release facility entry room, the

---

[1] In this appeal, Damiani only challenges his judgment of conviction for burglary.

property of Ada County Jail with the intent to commit the crime of Theft."[2]  Damiani's case proceeded to trial.

At trial, the evidence showed that Damiani and an individual named Bostwick both lived at the Ada County Work Release Facility (WRF).  The lobby of the WRF houses lockers that are provided to individual inmates in order to store medications.  One evening, Bostwick went to her locker in the lobby to take her medication.  She used the key to open her locker, took her medication, and lost her key sometime thereafter.  As seen from a video of the lobby, which was admitted into evidence, the next morning Damiani entered the lobby from within the facility, opened Bostwick's locker, took out a pill bottle, went into another room, and then returned a pill bottle to Bostwick's locker.  Thereafter, Damiani returned the key to a deputy and informed the deputy that he found the key in front of the lockers.  Deputies determined that the key belonged to Bostwick and returned it to her.  Later that evening, Bostwick returned to her locker to take her medication and noticed that some of her pills were missing.  Bostwick informed a deputy of the situation.  The deputy watched the security footage from the WRF lobby and saw Damiani access Bostwick's locker.  Consequently, the State charged Damiani with the above-listed crimes.

After the State rested, Damiani moved for judgment of acquittal arguing, as pertinent to this appeal, that the State's evidence was not sufficient to show that the lobby of the WRF is a "room" as used in I.C. § 18-1401.  Damiani, relying on *State v. Smith*, 139 Idaho 295, 77 P.3d 984 (Ct. App. 2003), argued that the lobby where the lockers are located is "simply a common area within the work release facility that every individual that enters into the facility has access

---

[2]     Initially, the State alleged that the burglary occurred by "enter[ing] into a certain room and/or locker, to wit:  the work release facility entry room and/or medical locker #33, the property of Ada County Jail with the intent to commit the crime of Theft."  Damiani filed a motion to dismiss the burglary charge arguing that the district court lacked subject matter jurisdiction because (1) the "entry room" was not a "room" within the meaning of Idaho Code § 18-1401, and (2) his due process rights were violated because the burglary charge pled in the alternative that Damiani committed burglary by entering the room and/or the locker within the room.  The State opposed the motion to dismiss but agreed to amend the charge to exclude reference to the locker.  Damiani agreed that the State's amendment would satisfy his due process concerns.  Ultimately, the State amended the charge and the district court denied Damiani's motion to dismiss.  The court found that whether Damiani entered a "room" within the meaning of I.C. § 18-1401 was a question for the jury to decide at trial and was not a jurisdictional issue appropriately resolved by a motion to dismiss.

to" and is not a room within the meaning of the statute because "[t]here is no seclusion or exclusion of outside visitors." The district court denied Damiani's motion.

Thereafter, the court conducted an off-the-record jury instruction conference and provided the parties an opportunity to object on the record. As it relates to this appeal, Damiani objected to Jury Instruction 20 which, in relevant part, defined "room" as "a portion of a space within a building or other structure separated by walls or partitions from other parts[.]" The court overruled Damiani's objection. Ultimately, the jury convicted Damiani on all charges. Damiani timely appeals.

## II.

### STANDARD OF REVIEW

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id*.

## III.

### ANALYSIS

Damiani argues that the district court erred by (1) denying his motion for judgment of acquittal, and (2) instructing the jury that the term "room" within I.C. § 18-1401 means "a portion of a space within a building or other structure separated by walls or partitions from other parts." Damiani's arguments both rest on his assertion that "room" within the burglary statute is ambiguous and case law, legislative history, and the rules of statutory construction dictate a

narrower definition of "room" than simply any partitioned area as indicated in the definitional instruction given by the district court.

At the time of Damiani's conviction, I.C. § 18-1401 read as follows:

> Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, vehicle, trailer, airplane or railroad car, with intent to commit any theft or any felony, is guilty of burglary.

As he did below, Damiani rests his argument on language used by this Court in *Smith*, 139 Idaho 295, 77 P.3d 984. Relying on *Smith*, Damiani argues that "room" within the burglary statute denotes "an interior space with an increased expectation of privacy and security akin to other standalone structures in the statute, such as a house or apartment." Based upon this definition, Damiani argues that the State failed to prove that Damiani entered a "room" when he entered a shared common area within the WRF and the district court's instruction defining "room" was erroneous.

In response, the State argues that the district court did not err by denying Damiani's motion for judgment of acquittal or instructing the jury on the definition of room. Specifically, the State contends that both of Damiani's arguments fail because "room" as used in I.C. § 18-1401 is unambiguous and should be given its ordinary, plain meaning which the district court provided to the jury in its definitional instruction. In addition, the State argues that the Court's analysis in *Smith* undermines Damiani's position because the *Smith* Court first concluded that "room" had a plain and ordinary meaning within the statute. The State further argues that the *Smith* Court then unnecessarily ignored its own description of the plain meaning of the word "room" in order to avoid a theoretical "absurd" result in situations where a person goes from room to room within a structure. The State contends that the *Smith* Court's unnecessary judicial gloss to avoid an absurd result is precluded by case law, fundamentally flawed, and should be limited or abrogated. We agree with the State.

In *Smith*, this Court addressed whether a separate office within a hospital constituted a "room" under the burglary statute. There, the State alleged that Smith committed burglary by entering a "room, to wit: an office" in the hospital. *Smith*, 139 Idaho at 296, 77 P.3d at 985. On appeal, Smith argued "that, under the plain language of I.C. § 18-1401, he cannot be convicted of burglary because a 'room,' within the context of the statute, means something akin to private residential quarters, as opposed to an office within a hospital facility." *Id*. The Court declined to

adopt Smith's narrow interpretation of the word "room" and held that the "common definition of a 'room' is a 'portion of a space within a building or other structure, separated by walls or partitions from other parts.'" *Id.* at 297, 77 P.3d at 986 (quoting Webster's Encyclopedic Dictionary of the English Language 1243 (1989)).

The Court noted that "prior Idaho case law does not support giving the term 'room' the narrow interpretation argued by Smith. Specifically, two Idaho cases have rejected adopting interpretations of the burglary statute that would exclude structures from coverage." *Smith*, 139 Idaho at 297, 77 P.3d at 986 (citing *State v. Marks*, 45 Idaho 92, 260 P. 697 (1927) and *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968)). The Court continued:

> We therefore construe "room" as having a nature similar to the other structures and objects capable of being burglarized. The protection against intrusion is the same for a room as for any of the other structures and objects listed in I.C. § 18-1401. However, our interpretation herein does not mean that a burglary occurs automatically when one, with the intent to commit any theft or felony, enters a room in a building from within another room in that building. There must be evident an expectation of protection from intrusion comparable to the expectation of protection from intrusion into the building from the outside. For example, occupants of separately leased offices within an office building expect protection from intrusion by occupants of the other offices; whereas members of a family residing in a house are likely to expect common access to all rooms with no separate expectation against intrusion into individual rooms. This interpretation avoids the absurdity of a burglary of a building becoming multiple burglaries, but leaves open the possibility of multiple charges where a room within a structure has a nature which should provide it with its own protection against burglary.

*Smith*, 139 Idaho at 297-98, 77 P.3d at 986-87. Based on that analysis, the Court concluded:

> In the instant case, we have an office within a hospital building. Clearly, it falls within the common definition given to the term "room." The office also has attributes from which it can be inferred that the expectation of protection from intrusion is comparable to the expectation of protection from intrusion from outside the hospital building. The office was designated as the office of the "Diagnostic Imaging Director." It was fully enclosed and its door was closed. It did not have any of the attributes consistent with a room that would be open to the public such as rooms in the hospital where patients would be serviced, treated or housed. Additionally, the window into the office revealed small quarters for a personal workstation. Thus, we conclude that in this instance, the hospital office qualifies as a "room" subject to protection from burglary.

*Id.* at 298, 77 P.3d at 987.

As noted, Damiani argues that a "room" is "an interior space with an increased expectation of privacy and security akin to other standalone structures in the statute, such as a

house or apartment." Damiani argues that *Smith* supports this interpretation. However, this Court's analysis in *Smith* went too far. In *Smith*, we correctly recognized that the ordinary meaning of the word "room" is a "portion of a space within a building or other structure, separated by walls or partitions from other parts." *Id.* at 297, 77 P.3d at 986. Various dictionary definitions support this meaning. *See State v. Bodenbach*, 165 Idaho 577, 586, 448 P.3d 1005, 1014 (2019) ("This Court often turns to dictionary definitions to ascertain the ordinary meaning of an undefined term in a statute. The statute need not be ambiguous to resort to dictionaries to determine the ordinary meaning of a term.") (citations omitted). For example, Merriam-Webster's dictionary defines "room" as "a partitioned part of the inside of a building." Room, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/room (last visited July 16, 2021). In addition, Cambridge Dictionary defines "room" as "a part of the inside of a building that is separated from other parts by walls, floor, and ceiling." Room, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/room (last visited July 16, 2021).

However, the *Smith* Court exceeded the limits of statutory construction when it adopted the ordinary meaning of the word "room" and that the room at issue fell within that definition, but then imposed additional judicial limitations to the term in an effort to avoid what it deemed could be potentially absurd results. Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. The Court improperly read limitations into the ordinary definition of "room" in order to address the hypothetical case where a burglary of a building could possibly become multiple burglaries, which the Court deemed "absurd." *Smith*, 139 Idaho at 298, 77 P.3d at 987. Interpreting the statute based on hypotheticals is contrary to case law, which requires that this Court give the words of a statute "their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). In addition, the Idaho Supreme Court has directed that a court "not revise or void an unambiguous statute on the grounds that it is patently absurd or that it would produce absurd results when applied as written." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). "If a statute is unsound or the policy behind it unwise, the power to correct the statute rests with the Legislature, not the judiciary."

*Id*. Thus, after concluding that "room" had a common definition and the statute was not ambiguous, the *Smith* Court should have followed the law as written and applied it to the facts of the case using the common definition of "room." Because the hospital office in Smith was plainly a "room" under its common and ordinary definition, the Court should have concluded its analysis there. If the Legislature wished to narrow the term "room" to only a place that offers an increased expectation of privacy and security akin to other standalone structures in the statute, it could have done so, but Idaho precedence does not permit judicial gloss to supplant plain meaning. Moreover, the *Smith* Court's hypothetical concerns regarding the propriety of multiple burglary charges resulting from the entry to a single structure could have been addressed without judicial construction of the word "room" in the statute. The Court exceeded its judicial authority by imposing additional judicial limitations to the term after finding the term was not ambiguous. Because the dicta of the opinion was beyond what precedent allows, we decline to apply that analysis from *Smith* in this case.

Here, the district court instructed the jury that "room" is defined as "a portion of a space within a building or other structure separated by walls or partitions from other parts." This definition is in accordance with the plain, ordinary meaning of the word "room," including that initially recognized in *Smith*. The district court did not err by providing the jury with this definition. Because Damiani's arguments both rest on his assertion that "room" within the burglary statute is ambiguous, and we disagree, Damiani's arguments that the district court erred by denying his motion for judgment of acquittal and instructing the jury on the definition of room fail. Accordingly, we conclude that the district court did not err by denying Damiani's motion for judgment of acquittal or instructing the jury on the definition of "room."

## IV.
## CONCLUSION

Damiani has failed to show that the district court erred by denying his motion for judgment of acquittal or by instructing the jury on the definition of "room" for purposes of the burglary statute. Accordingly, we affirm Damiani's judgment of conviction for burglary.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

7